| Velez v LSG 105 W. 28th, LLC |
|:---:|
| 2023 NY Slip Op 34537(U) |
| December 27, 2023 |
| Supreme Court, New York County |
| Docket Number: Index No. 159202/2018 |
| Judge: Paul A. Goetz |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. PAUL A. GOETZ**                    PART                    47

*Justice*

------------------------------------------------------------------------------X

JOSE LUIS VELEZ,

|  |  |
|---|---|
| INDEX NO. | 159202/2018 |
| MOTION DATE | 09/26/2022, 09/30/2022, 10/19/2022 |
| MOTION SEQ. NO. | 003 004 005 |

Plaintiff,

- v -

LSG 105 WEST 28TH, LLC, FLINTLOCK CONSTRUCTION
SERVICES, LLC,

Defendants.

**DECISION + ORDER ON
MOTION**

------------------------------------------------------------------------------X

LSG 105 WEST 28TH, LLC, FLINTLOCK CONSTRUCTION
SERVICES, LLC

Third-Party
Index No.  595788/2021

Plaintiffs,

-against-

CONSTRUCTION & REALTY SAFETY GROUP, INC.

Defendant.

------------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 003) 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 126, 129, 130, 131, 132, 133, 143, 144

were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER            .

The following e-filed documents, listed by NYSCEF document number (Motion 004) 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 127, 134, 135, 136

were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER            .

The following e-filed documents, listed by NYSCEF document number (Motion 005) 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 123, 124, 125, 128, 137, 138, 139, 140, 141, 142

were read on this motion to/for                    JUDGMENT - SUMMARY                 .

In this Labor Law action, plaintiff, Jose Luis Velez, seeks damages for personal injuries

he allegedly sustained on May 11, 2017 when he fell from a DOKA form while working at a

construction site located at 105 West 28th Street (the "Premises").  Plaintiff alleges that

[* 1]

defendants' violations of the industrial code and failure to provide him with the necessary safety equipment caused his accident.

At the time of the accident, the Premises was owned by defendant/third-party plaintiff LSG 105 West 28th, LLC ("LSG"), who hired defendant/third-party plaintiff Flintlock Construction Services LLC ("Flintlock") as the construction manager to build a new building (the "Project") at the Premises. Flintlock hired Plaintiff's employer, non-party Sky Materials Corp. ("Sky") as a subcontractor to perform form and concrete work on the Project. Third-party defendant Construction & Realty Safety Group, Inc. ("CRSG") was the Project's site safety manager.

In motion sequence 003, CRSG moves pursuant to CPLR § 3212 for summary judgment dismissing all claims, crossclaims, and third-party claims asserted against it.[1]

In motion sequence 004, plaintiff moves for summary judgment pursuant to CPLR § 3212 in his favor as to liability on his Labor Law §§ 240 and 241 claims as against LSG and Flintlock.

In motion sequence 005, LSG and Flintlock (the "Moving Defendants") move for summary judgment pursuant to CPLR § 3212 dismissing the complaint, all crossclaims and counterclaims, and granting summary judgment in their favor on their third-party contractual indemnification, common law indemnification, and contribution claims as against CRSG.

---

[1] CRSG argues in its memorandum of law (NYSCEF Doc. No. 118) that it is not liable under Labor Law §§ 240, 241 (6), 200 or common law negligence. There are no claims against CRSG alleging violations of Labor Law §§ 240, 241 (6), 200 or common law negligence. CRSG's arguments on these points will be considered as they apply to the third-party claims asserted against it.

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 2 of 28**

## BACKGROUND

*Plaintiff's Deposition Testimony*

Plaintiff appeared for deposition on June 9, 2021 (NYSCEF Doc. No. 118). At the time of the accident, he was employed by Sky, a construction company erecting a superstructure at the Premises (Plaintiff tr at 24, 30-31, 44). Plaintiff testified that Flintlock was the contractor for the Project (*id.* at 29). Plaintiff never spoke with anyone from Flintlock and had never heard of LSG or CRSG (*id.* at 29, 30, 92-93).

Plaintiff began working on the Project as a laborer and later as a carpenter (*id.* at 33). His foreman was "Elias Riera," a Sky employee, who was present at the worksite "all the time" (*id.* at 34). Plaintiff testified that his carpentry work included installing DOKA forms, the forms that are installed prior to pouring concrete to hold the concrete in place. Co-worker, "Jorge Saula" taught plaintiff how to install the DOKA forms (*id.* at 55, 57-58). Plaintiff further testified that Riera was the only person who instructed plaintiff as to carpentry work (*id.* at 34-36).

Plaintiff testified that the DOKA forms ranged in height and that workers did not use ladders to work on DOKA forms that were only nine feet high (*id.* at 279-280). He further testified that it was customary for workers to climb the nine-foot high DOKA forms, which were made of metal supports and rebar, to reach the top of the forms (*id.* at 279, 281). Sky employees stood on the metal supports and rebar to work on the DOKA forms, and plaintiff learned this technique from other Sky employees (*id.* at 166-168). Plaintiff testified that "[t]he foreman [Riera] always saw us do it that way. There wasn't another way. The foreman always wanted us to hurry and that was the way" (*id.* at 165). Plaintiff testified that Sky had ladders at the worksite (*id.* at 87-89), but "no one ever uses a ladder at that height of nine feet" (*id.* at 280).

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 3 of 28**

Plaintiff further testified that there were harnesses available at the worksite, located in the "shanty" and "laying all over the construction" (*id.* at 85-88). Plaintiff had worn a harness while doing other DOKA form work, working at heights over six feet, and while working on the exterior of the building on the Premises (*id.* at 85). When plaintiff wore a harness (while doing form work), it would be anchored to rods and safety lines in the ceiling (*id.* at 86). Plaintiff could not recall whether he ever wore a harness while doing formwork on the fourth floor of the building (*id.* at 87).

On the date of the accident, plaintiff was performing formwork with Saula on the fourth floor of the building (*id.* at 58, 71, 77). Plaintiff was climbing a nine-foot-high DOKA form and installing rods into hooks and holes on the form (*id.* at 267-268, 272-273). Immediately prior to the accident, plaintiff had installed a rod at a higher level of the DOKA form and was climbing down to continue installation on a lower level of the form (*id.* at 268). Plaintiff saw that the rod he had previously installed was not well connected and climbed back up to the higher level to fix the issue (*id.* at 268).

The accident occurred as Plaintiff was standing on the metal supports of the DOKA form approximately five feet from the ground (*id.* at 150-151). He was holding a "pick" tool in his right hand and holding on to the DOKA form with his left hand for support (*id.* at 161-162). Plaintiff used the pick to hammer the rod into the form when the rod "kicked back" and hit him in the face (*id.* at 177-178). Plaintiff felt his foot slip and he fell backwards off the DOKA form (*id.* at 177-178). He slipped and fell "instantly" after the rod hit his face (*id.* at 184).

Plaintiff testified that working on the DOKA forms required lubricating them with oil (*id.* at 88). He testified that on the date of the accident he had lubricated the DOKA form where the accident occurred (*id.* at 158). He further testified that he saw oil on the floor in the area where

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 4 of 28**

4 of 28

he was working prior to the accident (*id.* at 169-170). Prior to the accident, plaintiff did not observe any oil or debris on any of the metal supports or rebar that he was using to climb to the top of the DOKA form (*id.* at 281-282).

*Deposition Testimony of Andrew Stetler, Project Manager for Flintlock*

Andrew Stetler appeared for deposition on October 26, 2021 (NYSCEF Doc. No. 121). At the time of the accident, he was employed by Flintlock as the project manager for the Project (Stetler tr at 8-9). LSG was the owner of the Premises, and it hired Flintlock as the construction manager for the Project (*id.* at 10, 12). The Project entailed the new construction of a building to be used as a hotel (*id.* at 9). DOKA forms were used in the construction of the walls and columns on all the floors of the building (*id.* at 48).

Stetler testified that Flintlock's responsibilities included hiring subcontractors and putting together a health and safety plan, and that Flintlock had overall authority over the trades working on the Project (*id.* at 13-14, 19). Flintlock was also responsible for making sure that contractors followed safety procedures (*id.* at 40-41). Stetler was Flintlock's senior representative at the worksite (*id.* at 11). He was at the worksite approximately two to three days a week, while two Flintlock employees, a superintendent and assistant superintendent, were on the worksite daily (*id.* at 52).

Flintlock hired Sky as a concrete superstructure contractor on the Project, and Sky was responsible for erecting the DOKA forms (*id.* at 29, 48). Stetler testified that there were issues with Sky not following general safety procedures (*id.* at 33-34). He further testified that he received reports to this effect from his superintendent, "Lawrence Smith," and from site safety management (*id.* at 33-34). Stetler testified that it was the subcontractors' responsibility to address any safety deficiencies in their work (*id.* at 86). He further testified that Sky's foreman,

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 5 of 28**

5 of 28

[* 5]

"Kevin Griffin," was responsible for ensuring that Sky's workers had ladders to perform their work (*id.* at 54, 99).

At his deposition, Stetler was questioned as to his understanding of DOKA form work. He testified that DOKA form work required the use of stepladders and that DOKA forms are not designed for climbing (*id.* at 57-59). He further testified that, based on his OSHA and DOB training, it would be unsafe for Sky workers to use a DOKA form as a platform while attaching rebar to the top of the form (*id.* at 58-59, 88-89, 95).

Stetler testified that Sky was required to use stepladders for DOKA form work, and that he observed Sky having stepladders at the worksite for that purpose (*id.* at 57-58, 97). He further testified that plaintiff "should know better" than to install rebar into the DOKA form while on the form, and that plaintiff should know "he's supposed to be using a stepladder" (*id.* at 96).

Stetler testified that LSG hired CRSG as the site safety manager for the Project and that Tim McNamara was CSRG's site safety manager (*id.* at 23-25). McNamara's duties included walking around the worksite on a daily basis, generating a daily safety report, and rectifying any safety issues (*id.* at 26-27). CRSG would notify Flintlock if Sky was not following general safety procedures and Flintlock would notify Sky, via email, to correct any unsafe conditions (*id.* at 39, 43-44). It was not CRSG's responsibility to "physically correct" any unsafe conditions (*id.* at 87).

Stetler was informed of the accident by his superintendent, and Stetler prepared an incident report of plaintiff's accident (*id.* at 22-27, 49, 64).

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 6 of 28**

[* 6]

*Deposition Testimony of Frank Marino, vice president of CRSG*

Frank Marino appeared for deposition on January 19, 2022 (NYSCEF Doc. No. 99).  At the time of the accident, he was a vice president of CRSG (Marino tr at 9).  Marino testified that Flintlock was the general contractor on the Project (*id.* at 14) and that Sky was a concrete subcontractor (*id.* at 39).  CRSG is a safety consulting company that was hired by "Lightstone Group" to be the site safety manager for the Project (*id.* at 10, 12-13).  CRSG did not hire any subcontractors for the Project (*id.* at 35).

Timothy McNamara was the CRSG site safety manager assigned to the Project on the date of the accident (*id.* at 19).  McNamara's duties as site safety manager included observing the workers at the Project (*id.* at 79).  If a site safety manager observed a worker performing tasks in an unsafe manner, the safety manager would speak to the worker and "discuss with a competent person, their foreman typically" to correct what the worker was doing (*id.* at 79  82).  Marino testified that "the competent person is the person who's actually responsible for the safety of the worker" (*id.* at 80).  He further testified that Elias Riera was one of Sky's two assigned "competent persons" (*id.* at 81).

Marino further testified that McNamara's duties extended to fall protection.  If McNamara saw a worker engaged in unsafe work, such as failing to tie off their harness, he would speak to the worker and "share the information with the entire team, including the client" (*id.* at 135-136).  McNamara did not have the authority to stop work on the Project (*id.* at 82).

Marino testified that CRSG did not inspect the DOKA forms.  Typically, the DOKA forms would be inspected by an engineer hired by Sky (*id.* at 59).

Finally, Marino testified that he was not familiar with plaintiff's accident (*id.* at 35).

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 7 of 28**

[* 7]

7 of 28

*Deposition Testimony of Timothy McNamara, non-party witness*

Timothy McNamara, appeared for deposition on July 27, 2022 (NYSCEF Doc. No. 122). At the time of the accident, he was employed by CRSG as the site safety manager over the Project (*id.* at 12, 15-17). He testified that Flintlock was the general contractor on the Project and that Sky was performing excavation and superstructure work (*id.* at 36-37).

McNamara responsibilities included observing the worksite for any safety issues (*id.* at 12-13). If he noticed as safety issue, he would notify the superintendent, who would in turn notify the foreman (*id.* at 12-13). McNamara was present on the worksite for the entire workday, at least five days a week (*id.* at 18).

McNamara testified that Sky was responsible for their "own safety" and that he was not Sky's designated "competent person" (*id.* at 40-41). Sky had its own foreman and/or safety personnel, who were responsible for their employee's safety (*id.* at 42). Once McNamara notified one of Sky's "competent persons" of a safety issue, it was upon Sky to address the issue (*id.* at 91).

McNamara testified that on multiple occasions he had seen Sky workers climbing on the DOKA forms to reach different heights and that he did not recall seeing them using ladders (*id.* at 77-78). He further testified that climbing was a part of formwork and that workers would wrap themselves in "gooseneck chains" (clipped to the form) to prevent falls. McNamara testified that climbing on DOKA forms without some form of tethering was a safe practice (*id.* at 78-81).

*Affidavit of Jorge Saula, dated September 24, 2022*

Jorge Saula signed an affidavit (NYSCEF Doc. No. 119), wherein he states that he was employed by Sky as plaintiff's co-worker on the Project (Saula affidavit at ¶ 4, 16). He further

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 8 of 28**

8 of 28

[* 8]

states that Riera was his foreman and that the Sky workers only took orders from Riera (*id.* at ¶ 4, 7).

Saula states that Riera told the Sky workers to climb the DOKA forms in order to reach the required work height (*id.* at ¶ 11). He further states that reaching the top work area of a nine-foot high DOKA form required standing on the DOKA form, approximately five feet above the floor (*id.* at ¶ 12). He further states that "[b]ecause we were not working over six feet above the deck… our foreman did not instruct us to use our personal protection equipment" (*id.* at ¶ 9).

Saula states that on the date of the accident he and plaintiff were installing DOKA forms on the fourth floor of the building at the worksite (*id.* at ¶ 18). Saula was on the floor, cutting rods approximately ten feet away from the plaintiff, while plaintiff was climbing the DOKA form (*id.* at ¶ 19, 20). Saula states that workers were not given ladders to work on the DOKA forms located on the fourth floor and that climbing DOKA forms was "the way we did it at this project" (*id.* at ¶ 14).

Immediately prior to the accident, Saula saw plaintiff standing on the DOKA form, approximately five feet above the ground (*id.* at ¶ 21). Saula did not witness the accident but heard a loud noise and turned to see that plaintiff had fallen from the DOKA form (*id.* at ¶ 22).

*Affidavit of William Hickman, Senior Property Manager for The Light Stone Group, dated October 28, 2021*

William Hickman signed an affidavit (NYSCEF Doc. No. 120), wherein he states that he is a senior property manager for the Light Stone Group LLC ("Light Stone") (Hickman affidavit at ¶ 2). Light Stone is the managing agent for the Premises, which is owned by LSG (*id.* at ¶ 5).

He states that LSG retained Flintlock as the construction manager over the Project pursuant to an agreement dated March 30, 2016 (the "Construction Management Agreement")

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 9 of 28**

9 of 28

(*id.* at ¶ 7).  Hickman further states that CRSG was the site safety manager at the time of the accident (*id.* at ¶ 17).

As construction manager, Flintlock contracted with contractors (*id.* at ¶ 13).  LSG did not select contractors, determine the scope of the construction work, nor supervise any of the work being done on the Project at the time of the accident (*id.* at ¶ 15) and he has no personal knowledge of plaintiff's accident (*id.* at ¶ 9).

## DISCUSSION

"It is well settled that 'the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact'" (*Pullman v Silverman*, 28 NY3d 1060, 1062 [2016], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). "Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). "Once such a prima facie showing has been made, the burden shifts to the party opposing the motion to produce evidentiary proof in admissible form sufficient to raise material issues of fact which require a trial of the action" (*Cabrera v Rodriguez*, 72 AD3d 553, 553-54 [1st Dept 2010]). "The court's function on a motion for summary judgment is merely to determine if any triable issues exist, not to determine the merits of any such issues or to assess credibility" (*Meridian Mgt. Corp. v Cristi Cleaning Serv. Corp.*, 70 AD3d 508, 510-11 [1st Dept 2010] [internal citations omitted]). The evidence presented in a summary judgment motion must be examined "in the light most favorable to the non-moving party" (*Schmidt v One New York Plaza Co. LLC*, 153 AD3d 427, 428 [1st Dept 2017], quoting *Ortiz v Varsity Holdings, LLC*, 18 NY3d 335, 339 [2011]) and bare allegations or conclusory assertions are insufficient to create genuine issues of fact (*Rotuba*

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 10 of 28**

10 of 28

*Extruders v Ceppos*, 46 NY2d 223, 231 [1978]). If there is any doubt as to the existence of a triable fact, the motion for summary judgment must be denied (*id.*).

### *CRSG's late reply papers (motion sequence 003)*

By stipulation dated October 21, 2022 (NYSCEF Doc. No. 126), the parties and third parties agreed to a motion schedule requiring that all reply papers (on all of the motion sequences) would be served and filed on or before November 25, 2022. CRSG did not electronically filed its reply papers to motion sequence 003 until November 29, 2022 (NYSCEF Doc. No. 143). On November 30, 2022, LSG electronically filed a letter, addressed to CRSG's attorneys, indicating that LSG was rejecting CRSG's reply papers as untimely (NYSCEF Doc. No. 144).

"Parties are afforded great latitude in charting their procedural course through the courts, by stipulation or otherwise" (*See Katz v Robinson Silverman Pearce Aronsohn & Berman, L.L.P.*, 277 AD2d 70, 73 [1st Dept 2000] [internal citation omitted]; *see also Powell v Kasper,* 84 AD3d 915, 917 [2nd Dept 2011] [summary judgment motion filed beyond deadline set forth in parties' stipulation denied as untimely]).

Here, CRSG did not electronically file its reply papers until November 29, 2022 (*see* 22 NYCRR §202.5-b (f) (2) (ii)). As such, CRSG's untimely reply papers on motion sequence 003 will not be considered.

### *Plaintiff's Labor Law § 240 (1) claim against LSG (motion sequence 004, 005)*

Plaintiff moves for summary judgment as to liability on his Labor Law § 240 (1) claims against LSG. Moving Defendants move for summary judgment dismissing the claim.

Labor Law § 240 (1), also known as the Scaffold Law provides, in relevant part:

All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection,

159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC
Motion No.  003 004 005

Page 11 of 28

demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

"[T]he Labor Law imposes absolute liability on owners and general contractors for injuries that are proximately caused by the failure to provide appropriate safety devices to workers subject to gravity-related risks" (*Ladd v Thor 680 Madison Ave LLC*, 212 AD3d 107, 111 [1st Dept 2022]). To prevail on a Labor Law § 240 (1) claim, plaintiff must show that the statute was violated, and that this violation was a proximate cause of his injuries (*See Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 287 [2003]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

The legislative intent behind the statute is to place "ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor, instead of on workers, who are scarcely in a position to protect themselves from accident" (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985], *rearg denied* 65 NY2d 1054 [1985] [internal quotation marks and citations omitted]). Therefore, the statute should be liberally construed to achieve the purpose for which it was framed (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]).

Plaintiff argues that he is entitled to summary judgment as the accident occurred while he was working at an elevated height and that the accident was due to defendants' failure to provide him with appropriate safety devices. Specifically, plaintiff was working on a DOKA form, approximately five feet from the ground, when he was struck in the face causing him to fall from

159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC
Motion No.  003 004 005

Page 12 of 28

[* 12]

the form. Plaintiff argues that the defendants' failure to provide him with a ladder and/or harness was the proximate cause of the accident.

Moving Defendants argue that plaintiff's claim should be dismissed as plaintiff's choice to climb the DOKA form without proper safety equipment (i.e. a harness and/or ladder) was the sole proximate cause of his accident. They argue that ladders and harnesses were made available to plaintiff, but that he instead chose to climb the DOKA form without safety equipment. Moving Defendants further argue that no one ordered plaintiff to climb the DOKA form. They argue that there are issues of fact as to whether plaintiff was provided with a harness and/or ladder and whether said safety equipment would have prevented the accident.

Initially, there is no dispute that LSG was the owner of the Premises at the time of the accident and is therefore a proper Labor Law defendant. Further, there is no dispute that plaintiff fell from a DOKA form while working approximately 5 feet above the ground.

Saula, the Sky employee who worked with plaintiff on the date of the accident, states that Sky's foreman told Sky workers to climb the DOKA forms in order to reach the required work heights (Saula affidavit at ¶ 11). He also states that the foreman did not instruct the workers to wear protective equipment, nor were the workers provided with ladders to work on the fourth floor DOKA form (*id.* at ¶ 9, 14). Saula's statements are consistent with plaintiff's testimony that the foreman had "always seen us [Sky workers] do it that way [climbing DOKA forms]" (Plaintiff tr at 165-168). His statements are also consistent with plaintiff's testimony that the fourth floor DOKA form was nine feet high and that Sky workers did not use ladders for forms of that height (*id.* at 71, 161-162, 272-273, 276-277, 280).

Consequently, the record establishes that plaintiff was subject to an elevation related risk and that his foreman directed him to climb the subject DOKA form (*See e.g. Caba v 587-91*

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC
Motion No.  003 004 005**

**Page 13 of 28**

13 of 28

[* 13]

*Third Owner, LLC,* 213 AD3d 520, 521 [1st Dept 2023] ["Because plaintiff's foreman directed him to work on an elevated work platform… defendants were required to provide plaintiff with an adequate safety device"]; *Auriemma v Biltmore Theatre, LLC,* 82 AD3d 1, 9 [1st Dept 2011] [plaintiff entitled to summary judgment on his Labor Law § 240 (1) claim where his foreman directed him to descend from one elevation to another, resulting in plaintiff's injury]; *Harris v City of New York*, 83 AD3d 104, 110 [1st Dept 2011] [plaintiff entitled to summary judgment on his Labor Law § 240 (1) claim where foreman directed him to stand on top of the piece of wood that shattered beneath him due to a falling slab]); *Caban v Plaza Constr. Corp.,* 153 AD3d 488, 490 [2nd Dept 2017] [plaintiff met prima facie burden on Labor Law §240 (1) where his foreman directed him to work on a scaffold without assistance] [citations omitted]).

As such, plaintiff has met his prima facie burden on his section 240 (1) claim against LSG.

Further, Moving Defendants have failed to establish prima facie that no one directed plaintiff to climb the DOKA form, nor have they created an issue of fact on this point. Moving Defendants have not submitted any evidence to rebut plaintiff's testimony that the foreman routinely saw Sky workers climbing DOKA forms nor Saula's statement that the foreman directed Sky workers to climb DOKA forms.

Further, Moving Defendants have failed to raise an issue of fact as to whether plaintiff was a recalcitrant worker.

> To raise a triable issue of fact as to whether a plaintiff was the sole proximate cause of an accident, the defendant must produce evidence that adequate safety devices were available, that the plaintiff knew that they were available and was expected to use them, and that the plaintiff unreasonably chose not to do so, causing the injury sustained.

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 14 of 28**

14 of 28

(*Nacewicz v Roman Catholic Church of the Holy Cross*, 105 AD3d 402, 402-403 [1st Dept 2013]).

Recalcitrance "is not established merely by showing that the worker failed to comply with an employer's instruction to avoid using unsafe equipment or engaging in unsafe practices, or to use a particular safety device." (*Powers v Del Zotto & Son Bldrs.*, 266 AD2d 668, 669 [3rd Dept 1999]). Rather, the defendant must show that plaintiff deliberately refused to obey a direct and immediate instruction to use an available safety device (*See Vitucci v Durst Pyramid LLC*, 205 AD3d 441, 444 [1st Dept 2022], *citing Saavedra v 89 Park Ave. LLC*, 143 AD3d 615 [1st Dept 2016]; *see also Santo v Scro*, 43 AD3d 897, 898-899 [2nd Dept 2007]).

Saula's affidavit and plaintiff's testimony establish that plaintiff was not directed to wear a harness and/or use a ladder while working on the fourth floor DOKA form. They also establish that safety equipment was not made available to plaintiff immediately prior to working on the fourth floor DOKA form. Saula states in his affidavit that the foreman did not instruct Sky workers to use personal protection equipment when working on the fourth floor DOKA forms, nor were the workers provided with ladders to work on the forms (Saula Affidavit at ¶ 9, 14). This is consistent with plaintiff's testimony that Sky workers did not use ladders to work on nine-foot-high DOKA forms, such as the fourth floor DOKA forms, and that the foreman routinely saw Sky workers climbing such forms (Plaintiff tr at 183, 279-281).

Further, there is nothing from the record to suggest that anyone directed plaintiff to use a harness and/or ladder prior to his work on the fourth floor DOKA form. Multiple witnesses testified that it was unsafe to work on a DOKA form without a ladder, however, none of them testified that anyone immediately directed plaintiff to use a ladder or harness before working on the fourth floor DOKA form.

159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC
Motion No.  003 004 005

Page 15 of 28

15 of 28

[* 15]

Accordingly, since Moving Defendants have failed to establish that plaintiff was recalcitrant and/or the sole proximate cause of the accident, plaintiff is entitled to summary judgment as to liability on his Labor Law § 240 (1) claim against LSG.

### *Plaintiff's Labor Law § 240 (1) claim against Flintlock (motion sequence 004, 005)*

Plaintiff also moves for summary judgment as to liability on his Labor Law § 240 (1) claims against Flintlock.

Plaintiff argues that Flintlock is LSG's statutory agent based upon the agreement between LSG and Flintlock (NYSEF Doc. No. 117) (the "LSG-Flintlock Agreement"), and as such Flintlock is a proper Labor Law defendant (*see Lind v Tishman Constr. Corp. of N.Y.*, 180 AD3d 505, 505 [1st Dept 2020]). Neither Flintlock nor LSG oppose plaintiff's arguments, and the record sufficiently supports plaintiff's unopposed argument.

Accordingly, since Flintlock is a proper Labor Law defendant, and for the reasons stated above, plaintiff is entitled to summary judgment as to liability on his Labor Law § 240 (1) claim against Flintlock.

### *Plaintiff's Labor Law § 241 (6) claims against LSG and Flintlock (motion sequence 004, 005)*

Plaintiff moves for summary judgment in his favor on his Labor Law § 241 (6) claims against LSG and Flintlock, and Moving Defendants move for summary judgment dismissing the claims.

Labor Law §241 (6) provides, in relevant part, as follows:

> All contractors and owners and their agents, . . . when constructing or demolishing buildings or doing any excavation in connection therewith, shall comply with the following requirements:

> . . .

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 16 of 28**

6. All areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

"Labor Law § 241(6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Toussaint v Port Auth. of N.Y. & N.J.*, 38 NY3d 89, 93 [2022] [internal quotations marks and citations omitted]). The non-delegable duty is absolute and "imposes liability upon a general contractor for the negligence of a subcontractor, even in the absence of control or supervision of the worksite" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348-349 [1998], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 502 [1993] [emphasis omitted]).

"To establish liability under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision 'mandating compliance with concrete specifications'" (*Ennis v Noble Constr. Group, LLC*, 207 AD3d 703, 704 [2nd Dept 2022], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d at 505).

Plaintiff only opposes dismissal of his Labor Law § 241 (6) claim based upon Moving Defendants' alleged violation of 12 NYCRR 23-1.7(d), and only moves for relief with respect to the same. As such, plaintiff's Labor Law § 241 (6) claims based upon any other statutory violations are deemed abandoned, and are dismissed (*see Kempisty v. 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section."]).

**159202/2018 VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No. 003 004 005**

**Page 17 of 28**

17 of 28

[* 17]

Plaintiff's remaining Labor Law § 241 (6) claim is based upon Moving Defendants' alleged violation 12 NYCRR 23-1.7(d).

*Industrial Code 12 NYCRR 23-1.7(d)*

Industrial Code 12 NYCRR 23-1.7(d) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241(6) (*See Potenzo v City of New York*, 189 AD3d 705, 705 [1st Dept 2020]) and reads as follows:

> Protection from general hazards
>
> (d) Slipping hazards. Employers shall not suffer or permit any employee to use a floor, passageway, walkway, scaffold, platform or other elevated working surface which is in a slippery condition. Ice, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing.

Plaintiff argues that he is entitled to summary judgment in his favor on his Labor Law § 241 (6) claims because defendants' violation of section 23-1.7(d) was a proximate cause of his accident. Plaintiff argues that at the time of the accident there was oil on the DOKA form, creating a slipping hazard that was a proximate cause of the accident.

Moving Defendants argue that plaintiff's claims should be dismissed as there is no basis to conclude that plaintiff slipped upon any material on the DOKA form. They argue that the evidence instead establishes that plaintiff was struck in the face while climbing the DOKA form, which caused him to fall.

Here, Moving Defendants have established prima facie that section 23-1.7 (d) is not applicable to the circumstances of plaintiff's accident. Further, plaintiff has failed to establish prima facie that a violation of section 23-1.7 (d) was a proximate cause of his accident and/or created an issue of fact on this point. There is nothing from the record to indicate that plaintiff's accident occurred due to a slippery condition caused by oil.

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 18 of 28**

18 of 28

[* 18]

The record establishes that plaintiff's accident occurred when a rod hit him in the face, causing him to fall off the DOKA form (Plaintiff tr at 150-151). Plaintiff testified that he fell "instantly" after the rod hit him in the face (*id.* at 184). Further, although plaintiff testified that he had lubricated the DOKA form prior to working on it, he did not recall seeing any oil on the metal supports that he used to climb the form (Plaintiff tr at 158, 281-282). In addition, there is nothing from the record to suggest that plaintiff slipped on oil immediately prior to falling from the DOKA form.

Accordingly, Moving Defendants are entitled to summary judgment dismissing plaintiff's Labor Law § 241 (6) claims in their entirety, and plaintiff is not entitled to summary judgment in his favor on this claim.

### *Plaintiff's Labor Law § 200 and common law negligence claims against LSG and Flintlock (motion sequence 005)*

Moving Defendants move to dismiss plaintiff's Labor Law § 200 and common law negligence claims.

Labor Law § 200 (1) states, in pertinent part, as follows:

All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons.

Labor Law § 200 "codifies an owner's or general contractor's common-law duties of care, there are 'two broad categories' of personal injury claims: 'those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed.'" (*Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075, 1081 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 144 [1st Dept

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 19 of 28**

19 of 28

[* 19]

2012]). Neither common law negligence nor Labor Law § 200 makes an owner or contractor vicariously liable for the negligence of a downstream subcontractor (*See DeMaria v RBNB 20 Owner, LLC*, 129 AD3d 623, 625 [1st Dept 2015], citing *Burkoski v Structure Tone, Inc.*, 40 AD3d 378, 381 [1st Dept 2007]).

> Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it. Where the injury was caused by the manner and means [means and methods] of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work.

(*Cappabianca v Skanska USA Bldg. Inc.,* 99 AD3d at 144 [internal citations omitted]; *see also Toussaint v Port Auth. of N.Y. & NY*, 38 NY3d at 94 [to recover under Labor Law § 200 "a plaintiff must show that an owner or general contractor exercised some supervisory control over the operation"]).

Moving Defendants argue that they are entitled to summary judgment dismissing these claims as they did not supervise nor control plaintiff's work leading to the accident.

Plaintiff argues in opposition that there are issues of fact as to whether Moving Defendants lacked actual or constructive notice of unsafe work practices and whether they controlled the means and methods of the injury producing work. Plaintiff argues that the Moving Defendants knew or should have known that Sky's employees were climbing DOKA forms and that Flintlock's onsite staff was ultimately responsible for ensuring that Sky followed correct safety procedures.

In addition, plaintiff argues that oil on the DOKA forms constituted a dangerous site condition and was a proximate cause of his accident. He argues that there is an issue of fact as to whether Moving Defendants had actual or constructive knowledge of the oil condition.

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 20 of 28**

[* 20]

20 of 28

Here, plaintiff's accident arose from the means and methods of his work, i.e. climbing the DOKA form in order to reach an elevated height. As previously stated, the accident did not arise from plaintiff slipping on an oily surface, nor is there any basis to suggest that the accident arose from any inherent defect.

Neither LSG nor Flintlock supervised nor controlled the injury producing work. Plaintiff testified that his foreman (a Sky employee) was the only person who instructed him on his carpentry work, and that Saula (a Sky employee) taught plaintiff how to work on the DOKA forms (Plaintiff tr at 34 36, 55, 57 58). In addition, Stetler (the project manager for Flintlock) testified that Sky was responsible for its employee's safety (Statler tr at 55, 86, 99). There is nothing in the record to indicate that any entity other than Sky exercised any supervision or control over plaintiff's work on the DOKA form.

Accordingly, Moving Defendants are entitled to summary judgment dismissing plaintiff's Labor Law § 200 and common law negligence claims, and plaintiff is not entitled to summary judgment in his favor on said claims.

### *LSG's contractual indemnification claim against CRSG (motion sequence 003, 005)*

Moving Defendants move for summary judgment in favor of LSG on its third-party contractual indemnification claim against CRSG. CRSG moves for summary judgment dismissing the claim.

"A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018] quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). Further, "a party seeking contractual indemnification must prove itself free

159202/2018 VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC
Motion No. 003 004 005

Page 21 of 28

21 of 28

[* 21]

from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor" (*De Souza v Empire Tr. Mix, Inc.*, 155 AD3d 605, 606 [2nd Dept 2017] [internal quotation marks and citation omitted]; see e.g. *Hong-Bao Ren v Gioia St. Marks, LLC*, 163 AD3d 494, 494 [1st Dept 2018]).

Moving Defendants argue that LSG is entitled to contractual indemnification by CRSG pursuant to the written agreement, whereby LSG retained CRSG as the safety manager for the Project (NYSCEF Doc. No. 115) (the "LSG-CRSG Agreement"). Moving Defendants argue that the LSG-CRSG Agreement includes an indemnification provision obligating CRSG to indemnify LSG as to plaintiff's accident. Moving Defendants further argue that they were not negligent as to the accident.

CRSG argues that Moving Defendants' contractual indemnification claim should be dismissed as contractual indemnification is contingent upon CRSG's negligence, and CRSG was not negligent as to plaintiff's accident. CRSG further argues that it met its obligations under the LSG-CRSG Agreement and did not actually supervise nor control plaintiff's work.

The LSG-CRSG Agreement requires in relevant part that CRSG:

Provide a Licensed Site Safety Manager/CSFSM [Construction Site Fire Safely Manger Combo] for this project for the purposes of identifying hazards, and non-compliant conditions that violate the standards of OSHA CFR 1926, chapter 33 of the New York City Building Code and FDNY rules and regulations. These inspections will involve visual observations, photographs, and a written narrative report that will be delivered within one business day.

(LSG-CRSG Agreement, Proposal, page 2)

Further, the LSG-CRSG Agreement only requires that CRSG indemnify LSG for claims "arising out of or as a result or consequence of the negligent acts, errors or omissions of the Consultant, its employees, consultants and sub-consultants in the performance of the professional services under this Agreement" (LSG-CRSG Agreement at 2, Section II).

**159202/2018 VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No. 003 004 005**

**Page 22 of 28**

[* 22]

Here, Plaintiff's accident did not arise from CRSG's performance of its duties under the agreement, nor is there any basis to conclude that the accident occurred due to any negligence, errors, or omissions by CRSG in the performance of its duties. CRSG's duties under the LSG-CRSG Agreement were advisory and CRSG had neither the "obligation nor authority to correct work hazards" (*Dejesus v Downtown Re Holdings LLC*, 217 AD3d 524, 527 [1st Dept 2023][dismissing contractual indemnification claim against site safety manager based upon limited scope of contractual responsibilities]). These duties did not include directing any of the sub-contractors' work or otherwise enforcing safe practices on the jobsite. As such, plaintiff's accident did not arise from CRSG's duties under the LSG-CRSG Agreement.

In addition, the record establishes that CRSG did not actually direct nor control the injury producing work. Plaintiff testified that his foreman was the only person who directed his work (Plaintiff tr at 34 36). Frank Marino (the president of CRSG) and Timothy McNamara (the site safety manager employed by CRSG) both testified that if the site safety manager saw any subcontractors engaged in unsafe practices, the site safety manger was required to inform a "competent person" as designated by the subcontractor (Marino tr at 79; McNamara tr at 91). McNamara also testified that Sky was responsible for the safety of its own employees and that Sky had its own safety personnel (McNamara tr at 42). Marino further testified that McNamara did not have the authority to stop work on the Project (Marino tr at 82).

Accordingly, CRSG is entitled to summary judgment dismissing Moving Defendants' third-party contractual indemnification claim as to LSG, and Moving Defendants are not entitled to summary judgment in LSG's favor on its claim.

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 23 of 28**

23 of 28

*Flintlock's contractual indemnification claims against CRSG (motion sequence 003, 005)*

Moving Defendants also move for summary judgment in favor of Flintlock on its third-party contractual indemnification claim against CRSG. CRSG moves for summary judgment dismissing the claim.

For the reasons previously stated, plaintiff's accident did not arise from CRSG's performance of its contractual duties nor from any negligence on the part of CRSG.

In addition, Flintlock was not a party to the LSG-CRSG Agreement, nor does the LSG-CRSG Agreement include Flintlock as one of the "Consultant Indemnified Parties" entitled to indemnification under the terms of the agreement (LSG-CRSG Agreement at 2, Section II; 9, Exhibit B, Section II) (*See Collyer v LaVigne*, 202 AD3d 1335, 1341 [3rd Dept 2022], quoting *Arroyo v Central Islip UFSD*, 173 AD3d 814, 816 [2nd Dept 2019] ["One cannot be held liable under a contract to which he or she is not a party"]). Flintlock does not argue that it is a third-party beneficiary to the LSG-CRSG Agreement for the purposes of indemnification.

Accordingly, CRSG is entitled to summary judgment dismissing Moving Defendants' third-party contractual indemnification claim as to Flintlock, and Moving Defendants are not entitled to summary judgment in Flintlock's favor on this claim.

*LSG and Flintlock's common law indemnification and contribution claims against CRSG (motion sequence 003, 005)*

Moving Defendants move for summary judgment in their favor on their common law indemnification and contribution claims against CRSG. CRSG moves for summary judgment dismissing these claims.

"To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 24 of 28**

24 of 28

the injury-producing work" (*Naughton v City of New York, 94 AD3d 1, 10* [1st Dept 2012], *citing McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]; *Reilly v Digiacomo & Son*, 261 AD2d 318 [1st Dept 1999]).  "Thus, a party moving for summary judgment dismissing a common-law indemnification claim can meet its prima facie burden by establishing that the plaintiff's accident was not due to its own negligence" (*Cando v Ajay Gen. Contr. Co. Inc.*, 200 AD3d 750, 752 [2nd Dept 2021] [citations omitted])

Moving Defendants argue that CRSG made no effort to stop plaintiff from climbing the DOKA form on the date of the accident nor did CRSG enforce the use of available ladders. CRSG argues that it is entitled to dismissal of Moving Defendants' common law indemnification and contribution claims as it did not supervise nor control plaintiff's work.

As previously discussed, CRSG did not have a contractual duty to control any subcontractors' work nor the authority to stop work on the Project (*See Dejesus v Downtown Re Holdings LLC*, 217 AD3d at 526).  Similarly, there is nothing in the record to indicate that CRSG actually controlled or supervised the injury producing work.

Accordingly, CRSG is entitled to summary judgment dismissing Moving Defendants' third-party common law indemnification and contribution claims, and Moving Defendants are not entitled to summary judgment in their favor on these claims (*See Cando v Ajay Gen. Contr. Co. Inc.*, 200 AD3d at 753; *see also Padron v Granite Broadway Dev. LLC*, 209 AD3d 536, 537 [1st Dept 2022] [Court correctly granted summary judgment dismissing contribution claims, as the record demonstrated that movant was free from negligence]).

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 25 of 28**

25 of 28

### *CRSG's claims against LSG and Flintlock for common law indemnification and contribution (motion sequence 005)*

Moving Defendants move for summary judgment dismissing all cross-claims and counterclaims for contribution and common law indemnification as asserted against them. Neither plaintiff nor CRSG oppose the Moving Party's motion as to these claims.

For the reasons previously stated, there is no basis to conclude that the Moving Defendants were negligent as to plaintiff's accident.

Accordingly, Moving Defendants are entitled to summary judgment dismissing CRSG's common law indemnification and contribution claims as against them (*See Cando*, 200 AD3d at 753; *see also* Padron, 209 AD3d at 537).

### *LSG and Flintlock's breach of contract claim against CRSG for failure to obtain insurance (motion sequence 003)*

CRSG moves for summary judgment dismissing LSG and Flintlock's breach of contract claims based upon CRSG's alleged failure to procure insurance.

The LSG-CRSG Agreement requires that CRSG obtain insurance naming LSG as an additional insured (LSG-CRSG Agreement at 5, Section IV). "An agreement to indemnify is separate and distinct from an agreement to procure insurance." (*Mt. Hawley Ins. Co. v American States Ins. Co.*, 139 AD3d 497, 498 [1st Dept 2016]). Therefore, LSG and Flintlock's breach of contract claims against CRSG, based upon CRSG's alleged failure to obtain insurance, are separate and apart from their claims for contractual indemnification against CRSG (which were dismissed for the previously stated reasons).

CRSG's arguments for dismissal of LSG and Flintlock's breach of contract claims address general breach of contract principles, i.e. that CRSG's site safety manager adequately performed his contractual under the LSG-CRSG Agreement. However, LSG and Flintlock's

**159202/2018   VELEG, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 26 of 28**

breach of contract claims against CRSG are based solely upon the specific allegation that CRSG failed to obtain insurance as required by the LSG-CRSG Agreement.

Here, CRSG fails to attach any insurance policy relevant to the LSG-CRSG Agreement (*See Public Adm'r of Queens County v 124 Ridge LLC,* 203 AD3d 493, 495 [1st Dept 2022][movant "failed to establish, as a matter of law, that it procured the insurance it was contractually obliged to purchase, since it failed to submit the insurance policy"]).

Accordingly, CRSG is not entitled to summary judgment dismissing LSG and Flintlock's third-party claims for breach of contract for failure to procure insurance as required by the LSG-CRSG Agreement.

The parties' remaining arguments have been considered and are unavailing.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff, Jose Luis Velez's, motion for summary judgment pursuant to CPLR § 3212 as to liability in his favor on his Labor Law §§ 240 and 241 (6) claims (motion sequence 004) as against LSG 105 West 28th, LLC ("LSG") and Flintlock Construction Services LLC ("Flintlock") is granted as to the section 240 (1) claim only, and is otherwise denied; and it is further

**ORDERED** that defendants, LSG and Flintlock's, motion for summary judgment pursuant to CPLR 3212 dismissing the complaint, all cross-claims, and counterclaims as against them and for summary judgment on their third party contractual indemnification claims against Construction & Realty Safety Group, Inc.'s ("CRSG")  (motion sequence 005) is granted to the extent that plaintiff's Labor Law § 241 (6) as well as his Labor Law § 200 and common law

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 27 of 28**

27 of 28

[* 27]

negligence claims and CRSG's common law indemnification and contribution claims as against LSG and Flintlock are hereby dismissed and the motion is otherwise denied; and it is further

**ORDERED** that CRSG's motion for summary judgment pursuant to CPLR § 3212 dismissing all claims, cross-claims, and counterclaims as against it (motion sequence 003) is granted to the extent that LSG and Flintlock's third party contractual indemnification, common law indemnification, and contributions claims against CRSG are hereby dismissed and the motion is otherwise denied.

20231227162840PG0ETZ15D9A4D2BECA14561896F018DF259BD63

**12/27/2023**
**DATE**

**PAUL A. GOETZ, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**159202/2018   VELEZ, JOSE LUIS vs. LSG 105 WEST 28TH, LLC**
**Motion No.  003 004 005**

**Page 28 of 28**

[* 28]